UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIE JONES,

          Plaintiff,                CIVIL ACTION NO. 07-11002

       v.                     DISTRICT JUDGE ROBERT H. CLELAND

KAKANNI and BENCY K. MATHAI,     MAGISTRATE JUDGE VIRGINIA M. MORGAN

          Defendants.[1]

_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff of his rights under the United States Constitution through their deliberate indifference to his medical needs. The matter comes before the court on defendants Kakanni and Mathai's Motion for Summary Judgment (D/E #115). Plaintiff has filed a response in opposition to defendants' motion (D/E #120) and defendants have filed a reply to plaintiff's response (D/E #121). For the

---

[1]There were a number of other defendants in this action originally, but defendants Richardson, Fitzhugh, Singlton, Filsinger, Tony LNU, Lott, Ault, Ball, Tudor, Van Setters, Pelon, Armstrong, Palmer, Pung, Prevo, Hense, Hankerd and Croll were dismissed from this action on March 31, 2008 (D/E #93) and defendants Santana, Dousst, Hansen, Linda LNU, Siegel, Barwell, Melissa LNU and Meyers were dismissed from this action on May 7, 2008 (D/E #101). The only remaining defendants are Kakanni and Mathai.

reasons discussed below, this Court recommends that defendants' motion for summary judgment be **GRANTED** and that this case be closed.

## II. Background

### A. Complaint

On March 8, 2007, plaintiff filed this lawsuit against defendants pursuant to 42 U.S.C. § 1983, alleging that defendants were deliberately indifferent to his medical needs (D/E #1).  As noted above, most of the original defendants have been dismissed and only plaintiff's claims against Kakanni and Mathai remain in this case.

With respect to defendant Kakanni, plaintiff alleges that when he first arrived at the Parnell Correctional Facility (SMT) in Jackson, Michigan, he informed both defendant Kakanni, who is a physician's assistant, and a Dr. Camaan that he could not "go up North," *i.e.*, the upper peninsula of Michigan, because he would have a severe asthma attack if he did.  Plaintiff also alleges that, while Dr. Camaan agreed that plaintiff should not be sent to the upper peninsula, Kakanni refused to believe what plaintiff told her and, in July 2003, Kakanni deliberately scheduled plaintiff to be transferred to a prison located in the upper peninsula of Michigan.  Plaintiff further alleges that he started to become very scared and stressed about his upcoming transfer, and that he suffered a mild asthma attack the very night he was to be transferred.  According to plaintiff, he was rushed to the emergency room at Foote Hospital.  Plaintiff also claims that he was not seen by any medical personnel when he returned to SMT from the hospital and he was again cleared for transfer by Kakanni on July 21, 2003.  Plaintiff further claims that, when he was subsequently sent to a prison in the upper peninsula, he suffered a

severe asthma attack while on the bus.  Plaintiff also alleges that "[Kakanni] has deliberately refused me medication that a doctor at the same facility, had ordered[.] Which is a form of deliberate indifference! (sic) and she has refused me treatment when she knew that I was in clear need of one."

With respect to defendant Mathai, who is a medical doctor, plaintiff alleges that, on October 23, 2003, plaintiff went to health services to receive breathing treatment ordered by Dr. Camaan and that, while he was there, plaintiff said that a nurse had violated his rights the day before.  According to plaintiff, while Dr. Mathai took plaintiff into an examination room, he only told the nurses to assess plaintiff's breathing and to send plaintiff back to his cell without giving plaintiff the treatment ordered by Dr. Camaan.  Plaintiff claims that Dr. Mathai's examination was incomplete and that he denied plaintiff medication.

### B. Motion Before the Court

On October 29, 2008, defendants filed the motion for summary judgment pending before the court (D/E #115).  In that motion, defendants argue that, with respect to defendant Dr. Mathai, plaintiff failed to exhaust his administrative remedies prior to filing suit.  Defendants also argue that no genuine issue of material fact is in dispute and they are entitled to judgment as a matter of law.  Defendants further argue they should be granted summary judgment because plaintiff failed to present a witness list in accordance with the scheduling order and because plaintiff failed to sign authorizations necessary to secure relevant medical information.

On December 2, 2008, plaintiff filed his response to defendants' motion for summary judgment (D/E #120).  In that response, plaintiff argues that he has clearly exhausted his

administrative remedies because his grievance was "excepted" by the MDOC Grievance Coordinator at all three steps.  Plaintiff also argues that genuine issues of material fact are in dispute in this case because plaintiff was denied treatment for asthma and asthma is a serious condition.

On December 12, 2008, defendants filed a reply to plaintiff's response to their motion for summary judgment (D/E #121).  In that reply, defendants argue that plaintiff's response was untimely and, therefore, in violation of this court's order.  Defendants also argue that only one grievance mentions Dr. Mathai, that grievance did not name him at Step I, and it only accused a nurse of lying about whether Dr. Mathai was present.  Defendants further argue that plaintiff provides no evidence in support of his deliberate indifference claims.

### III. Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(b) states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co.,

-4-

Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also

B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once

the moving party has carried his burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106

S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his

pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, quoting First

National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968).

## IV. Discussion

As a preliminary matter, this court would note that plaintiff repeatedly asserts in his

response that a review of his complete medical file would confirm all of his claims, he does not

have his complete medical records, and that the court should order defendants to provide them to

plaintiff.  However, plaintiff refused to sign an authorization to release his medical file to

defendants.  In addition, plaintiff did not request a continuance of the summary judgment

determination or file an affidavit pursuant to Fed. R. Civ. P. 56(f) indicating that he is unable to

present facts essential to justify the his opposition to the motion for summary judgment because

of a lack of discovery.  Fed. R. Civ. P. 56(f) has been referred to as a "carefully crafted" rule that

serves as a vehicle through which the non-movant meets his "obligation to inform the district

court of his need for discovery," <u>Vance ex rel. Hammons v. United States</u>, 90 F.3d 1145, 1149

(6th Cir. 1996), and the Sixth Circuit has stressed the importance of complying with Rule 56(f)'s

requirement through the use of affidavits, as opposed to briefs: "[a] reference to Rule 56(f) and

to the need for additional discovery in a memorandum of law in opposition to a motion for

summary judgment is not an adequate substitute for a Rule 56(f) affidavit . . . and the failure to

file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity

for discovery was inadequate." <u>Cacevic v. City of Hazel Park</u>, 226 F.3d 483, 488 (6th Cir. 2000)

(quoting <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996)).

Moreover, to the extent the request in plaintiff's motion is even considered, plaintiff does

not describe exactly what evidence he needs or what it will show. "Beyond the procedural

requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party

making such a filing indicate to the district court its need for discovery, what material facts it

hopes to uncover, and why it has not previously discovered the information." <u>Cacevic</u>, 226 F.3d

at 488. <u>See also</u> <u>Wallin</u>, 317 F.3d at 564 ("[i]t is up to the party opposing the motion to state

why more discovery is needed."); <u>Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters,</u>

<u>Inc.</u>, 280 F.3d 619, 627 (6th Cir. 2002) ( "[T]he non-movant must file an affidavit pursuant to

Fed. R. Civ. P. 56(f) that details the discovery needed, or file a motion for additional

discovery."); <u>Good v. Ohio Edison Co.</u>, 149 F.3d 413, 422 (6th Cir. 1998) (holding that a party

invoking Rule 56(f) protections must "affirmatively demonstrate ... how postponement of a

ruling on the motion will enable him, by discovery or other means, to rebut the movant's

showing of the absence of a genuine issue of fact") (internal quotation marks omitted).

"Nebulous assertions that more discovery time would have produced evidence to defeat summary judgment will be unavailing." Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003). The court has reviewed a significant amount of plaintiff's medical records and concludes that further documents would not be helpful.

### A. Claim Against Dr. Mathai

As discussed above, plaintiff alleges that Dr. Mathai was deliberately indifferent to plaintiff's serious medical needs when plaintiff went to health services on October 23, 2003.  In defendants' motion for summary judgment, they argue that Dr. Mathai is entitled to summary judgment because plaintiff failed to exhaust his administrative remedies and because no genuine issue of material fact is in dispute.

### 1. Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court.  Jones v. Bock, 549 U.S. 199 (2007); Woodford v. Ngo, 548 U.S. 81 (2006).  Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 548 U.S. at 90-91 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures,

specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").  However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, <u>Curry v. Scott</u>, 249 F.3d 493, 501 -503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute." <u>Wyatt v. Leonard</u>, 193 F.3d 876, 879 (6th Cir. 1999).

The administrative procedure applicable to the plaintiff's claims are set forth in MDOC Policy Directive 03.02.130 "Prisoner/Parolee Grievances."[2]  Under that policy, an inmate may submit grievances "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant."  (PD 03.02.130, ¶ E)  Per the general grievance process, within five business days after attempting to resolve a grievable issue with prison staff, a prisoner may send a completed grievance form to the Step I Grievance Coordinator.  (PD 03.02.130, ¶ X)  The Grievance Coordinator shall then determine within fifteen business days if the grievance should be accepted or rejected.  (PD 03.02.130, ¶ Y)  If the prisoner is dissatisfied with the Step I response or if he did not receive a timely response, he may appeal the grievance to Step II grievance.  (PD 03.02.130, ¶ DD)  Respondents at Step II include

---

[2]That policy directive, with an effective date of December 18, 2003, is attached as Exhibit A to Defendants' Motion for Summary Judgment.  However, given that plaintiff's allegations against Dr. Mathai involve events that allegedly occurred in July 2003, defendants have not attached the correct version of the policy directive.  Nevertheless, the prior version of the policy directive did not differ from the one provided by defendants in any ways relevant to this case and, as discussed below, plaintiff has clearly failed to file or completely appeal any grievance against Dr. Mathai.

the Warden and the officials responsible for the department the subject matter of the grievance

involves.  (PD 03.02.130, ¶ FF)  A determination on that Step II grievance should be made

within fifteen business days after it is received.  (PD 03.02.130, ¶ EE)  If the prisoner is

dissatisfied with the Step II response or if he did not receive a timely response, he may appeal

the grievance to Step III.  (PD 03.02.130, ¶ HH)  Each grievance received at Step III is logged on

a computerized grievance tracking system and it should be responded to by the Grievance

Appeals Section.  (PD 03.02.130, ¶ II)  Step III is the final stage of the MDOC grievance process

and the total grievance process from the point of filing a Step I grievance to providing a Step III

response shall generally be completed within 90 calendar days.  (PD 03.02.130, ¶ U)

In this case, the grievance inquiry screen provided by defendants[3] shows that plaintiff

only completed the MDOC grievance process through Step III with respect to one grievance

filed in October of 2003, Grievance No. SMT-2003-10-3596-12e4[4], and both defendants and

plaintiff limit their discussion to that grievance.  In that grievance, plaintiff alleges that plaintiff

went to health services for his breathing treatment on October 22, 2003, but an unnamed nurse

denied him the treatment.  The Step I response to plaintiff's grievance stated that a Nurse

Santana stopped plaintiff's treatment because she observed plaintiff coughing into his breathing

machine and wasting the medication.  The Step I response also stated that Dr. Mathai saw

plaintiff improperly using the breathing treatment and decided that she would examine plaintiff,

---

[3]The Grievance Inquiry Screen for plaintiff is attached as Exhibit J to Defendants' Motion for Summary Judgment.

[4]Grievance No. SMT-2003-10-3596-12e4, and the subsequent appeals and responses, are attached as Exhibit K to Defendants' Motion for Summary Judgment.

but that plaintiff was uncooperative with the examination and it was determined that he did not

need the breathing treatment.  On the basis of those facts, plaintiff's Step I grievance was denied.

Plaintiff appealed his grievance to Step II on the basis that the nurse improperly stopped

the treatment because plaintiff's coughing was making her nauseous.  Plaintiff also asserted that

the nurse and Dr. Mathai lied when they said that Dr. Mathai examined plaintiff.  Plaintiff's Step

II Grievance Appeal was subsequently denied on the basis that "[t]here is no evidences (sic) or

documentation that Nurse Santana treated [plaintiff] rudely and unprofessional (sic)" and

"[a]ppropriate medical treatment was provided to grievant's healthcare issue."

Plaintiff appealed his grievance to Step III on the basis that his grievance had nothing to

do with unprofessional behavior and, instead, he was complaining about her deliberate

interference to plaintiff's treatment and medications.  Plaintiff also asserted that Nurse Santana

lied when she said Dr. Mathai was there and that Dr. Mathai examined plaintiff.  Plaintiff further

asserted that an examination of his medical file would demonstrate the truth in plaintiff's

grievance.  Plaintiff's Step III Grievance Appeal was subsequently denied on the basis that:

> Review of the record and information presented upon appeal to
> Step III indicates that this grievant was appropriately addressed at
> Step I and II.  The grievant's breathing treatment was stopped due
> to his inappropriate behavior on the advice of the MSP.  The MSP
> was going to evaluate him but he was uncooperative with the
> examination and it was determined that the treatment was not
> necessary.

In light of that the grievance inquiry screen and Grievance No. SMT-2003-10-3596-12e4,

plaintiff failed to exhaust his administrative remedies with respect to Dr. Mathai prior to filing

this lawsuit and Dr. Mathai is entitled to summary judgment.  Grievance No. SMT-2003-10-

3596-12e4, the only grievance filed in the relevant time frame and pursued through Step III of

the MDOC grievance process, was made over the alleged denial of medical treatment by a nurse

on October 22, 2003. Plaintiff's complaint, on the other hand, was made over the alleged denial

of medical treatment by Dr. Mathai on October 23, 2003. Neither Dr. Mathai nor her actions

were the subject of the exhausted grievance.

Both plaintiff's complaint and his grievance appeals confirm that there were two separate

alleged incidents. Plaintiff's complaint contains allegations against Nurse Santana with the

respect to the alleged denial of medical care on October 22, 2003 (Complaint, p. 13)[5] and, as

described above, allegations against Dr. Mathai with respect to the alleged denial of medical care

on October 23, 2003 (Complaint, p. 19). Moreover, when making his claim against Dr. Mathai,

plaintiff specifically alleges that Dr. Mathai took plaintiff back to the examination room and

denied plaintiff medical treatment after plaintiff told an officer "that the nurse yesterday had

violated my rights and things" (Complaint, p. 19). In plaintiff's grievance appeals, he

specifically argues that Dr. Mathai was not present when the events leading to his grievance

occurred and that the MDOC erred when it found that Dr. Mathai was present on the basis of

lies.

Thus, plaintiff either did not file a grievance against Dr. Mathai with respect the alleged

denial of medical care on October 23, 2003, or plaintiff did appeal that grievance through Step

III of the MDOC grievance process. Either way, plaintiff failed to properly exhaust his

---

[5]As noted above, plaintiff's claim against Nurse Santana was dismissed from this action
on May 7, 2008 (D/E #101).

administrative remedies as to Dr. Mathai prior to filing this lawsuit and Dr. Mathai is entitled to summary judgment on that basis.

### 2. Eighth Amendment Claim

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 103-104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs.  Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one.  Wilson, 501 U.S. at 300.

The objective component of a deliberate indifference claim is satisfied by a showing that plaintiff had a serious medical need.  Wilson, 501 U.S. at 297.  "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test."  Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004).  However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'"  Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).

To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it."

-12-

Farmer v. Brennan, 511 U.S. 825 (1994); Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).  Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992).  Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition.  Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted).  However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.  Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

In this case, Dr. Mathai argues that there is no evidence that he was deliberately indifferent to any serious medical need.  In support of that argument, defendants provide Progress Notes from plaintiff's medical file indicating that, on October 23, 2003, Dr. Mathai attempted to assess plaintiff, but plaintiff refused to cooperate.  (Progress Notes; attached as Exhibit H to Defendants' Motion for Summary Judgment)  Those progress notes also reflect Dr. Mathai's conclusions that plaintiff was not in distress, did not need the medications, and was clearly abusing Benadryl.  (Progress Notes; attached as Exhibit H to Defendants' Motion for Summary Judgment)  Additionally, defendants provide an affidavit from Dr. Mathai in which Dr. Mathai states that plaintiff came in for breathing treatment on October 23, 2003, but plaintiff

refused to cooperate with a lung examination and Dr. Mathai determined, after assessing the treatment plan, that plaintiff was not in need of a nebulizer treatment at that time.  (Affidavit of Dr. Mathai, ¶¶ 7-12; attached as Exhibit E to Defendants' Reply Brief)

Plaintiff did not provide any evidence in his response to Dr. Mathai's arguments and, instead, he merely relies on his unsupported allegations that Dr. Mathai completely denied him treatment in violation of another doctor's orders.

Viewing the evidence and making all reasonable inferences in favor of plaintiff, as the Court must, Matsushita, 475 U.S. at 587, this court finds that no genuine issue of material fact exists with respect to plaintiff's claim of deliberate indifference against Dr. Mathai and that Dr. Mathai is entitled to judgment as a matter of law.  The evidence submitted by Dr. Mathai demonstrates both that he attempted to examine plaintiff and that the treatment plaintiff was requesting was not necessary at that time.  Such evidence is sufficient to meet defendants' initial burden of demonstrating the absence of a genuine issue of material fact.  As discussed above, once the moving party has carried that burden, the party opposing the motion cannot merely rest upon the allegations contained in his pleadings and "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. Here, plaintiff has merely rested upon the allegations contained in his complaint the record taken as a whole could not lead a rational trier of fact to find for plaintiff.  Consequently, there is no genuine issue for trial.

-14-

**B. Claims Against Kakanni**

As described above, plaintiff alleges that Kakanni was deliberately indifferent to plaintiff's serious medical needs when Kakanni approved plaintiff's transfer to a prison in the upper peninsula of Michigan despite knowing that plaintiff could not be sent to such a prison because of his asthma and when Kakanni denied plaintiff medication even though the medication had been ordered by a doctor. In defendants' motion for summary judgment, Kakanni argues that she was not personally involved in the decision to transfer plaintiff and that no genuine issue of material fact exists with respect to any of plaintiff's deliberate indifference claims against her.

**1. Personal Involvement**

To succeed in under § 1983 , a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983. See Turner v. City of Taylor, 412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted). Moreover, the Sixth Circuit held in Shehee that a denial of an administrative grievance and the

-15-

failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983. Shehee, 199 F.3d at 300.

Along with their motion, defendants provided a Transfer Assessment/Screening form and a Health Review for MDOC Transfer form related to plaintiff's July 2003 transfer. (Transfer Assessment/Screening and Health Review for MDOC Transfer; attached as Exhibit D to Defendants' Motion for Summary Judgment) Both of those forms indicate that plaintiff was cleared by medical personnel for transfer, but Kakanni was not the one who signed the forms and there is nothing in them to indicate that Kakanni was involved in plaintiff's transfer.

In his response to defendants' motion for summary judgment, plaintiff merely repeats his unsupported assertion that Kakanni was the one who approved the transfer. As discussed above, the party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and, if the moving party carries that initial burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial" Matsushita, 475 U.S. at 587, and the opposing party cannot merely rest upon the allegations contained in his pleadings. Banks, 330 F.3d at 892; Fed. R. Civ. P. 56(e). Here, defendants met their initial burden by providing the transfer documents and plaintiff has merely rested on the unsupported allegations of his complaint. Even viewing the evidence and drawing all reasonable inferences in favor of plaintiff, a rational trier of fact could not find for plaintiff and, consequently, no genuine issue of material fact exists with respect to Kakanni's personal involvement in plaintiff's transfer and Kakanni is entitled to judgment as a matter of law on that claim.

**2. Eighth Amendment Claims**

**a. Alleged Clearance for Transfer**

Assuming *arguendo* that she was personally involved in any such clearance, Kakanni argues that there is no genuine issue of material fact in dispute with respect to the objective component of plaintiff's claim that she was deliberately indifferent to plaintiff's serious medical needs when she cleared plaintiff for a transfer to a prison in the upper peninsula.

As discussed above, the objective component of a deliberate indifference claim is satisfied by a showing that plaintiff had a serious medical need.  Wilson, 501 U.S. at 297.  "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test."  Johnson, 398 F.3d at 874 (quoting Blackmore, 390 F.3d at 899).  However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'"  Johnson, 398 F.3d at 874 (quoting Napier, 238 F.3d at  739).

Defendants point out that plaintiff has no evidence even suggesting that plaintiff has a serious medical condition that limited plaintiff to prisons in the lower peninsula of Michigan.  By doing so, defendants have met their initial burden of demonstrating the absence of a genuine issue of material fact, as defendants need not support their motion with affidavits or other similar materials "*negating* " plaintiff's claim, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (original emphasis), and "the burden on the moving party may be discharged by 'showing'--that

is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.[6]

Kakanni's SOAP Note Summary, provided by defendants, does state that plaintiff told Kakanni that the "up north climate does not agree with him" and that plaintiff told Kakanni that he had a flare up after being transferred to Standish Maximum Prison (MDOC SOAP Note Summary, attached as Exhibit F to Defendants' Motion for Summary Judgment), but plaintiff does not provide any evidence regarding a serious medical need. He has merely rested upon the unsupported allegations contained in his complaint and, consequently, he has failed to demonstrate that a genuine issue of material fact is in dispute. Kakanni is, therefore, entitled to summary judgment on plaintiff's claim that she was deliberately indifferent to plaintiff's serious medical needs by clearing plaintiff for a transfer up north, assuming *arguendo* that Kakanni was personally involved in the transfer.

### b. Alleged Denial of Medications

[6]Defendants also provided a Discharge Information Record from Standish Community Hospital dated July 24, 2003 and medical notes prepared by Kakanni on July 28, 2003. (Discharge Information Record, attached as Exhibit E to Defendants' Motion for Summary Judgment; MDOC Progress Notes, attached as Exhibit G to Defendants' Motion for Summary Judgment)  The discharge record indicates that plaintiff was being sent back to prison by a Dr. Runyan and that plaintiff would be able to receive "aerosol treatment" at the prison.  Kakanni's notes indicate that, after plaintiff had been seen in the emergency room due to asthma exacerbation, she assessed plaintiff upon his return, medications were ordered, and follow-up visits were ordered.  Therefore, the medical evidence supplied by defendants indicates that plaintiff received treatment by Kakanni after plaintiff returned from Standish Community Hospital.

With respect to plaintiff's claim that Kakanni denied him medications, defendants argue that plaintiff made no such claim in the complaint and that, even if he did, plaintiff has no evidence supporting such a claim. As described above, while plaintiff does not provide any details in his complaint, he does allege that "[Kakanni] has deliberately refused me medication that a doctor at the same facility, had ordered."

While defendants do not submit any evidence in support of their argument, they need not support their motion with affidavits or other similar materials "*negating* " plaintiff's claim, Celotex, 477 U.S. at 323 (original emphasis), and "the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Here, defendants point out that plaintiff has no evidence explaining his need for medications or supporting his claim that Kakanni was deliberately indifferent to any claim plaintiff did have.

In response to defendants' motion, plaintiff correctly notes that he does allege that Kakanni denied him medications, but he does not provide any details regarding the specifics of his claim and he does not provide any evidence demonstrating that a genuine issue of material fact is in dispute with respect to that claim. Given the complete lack of evidence of any evidence, Kakanni is entitled to summary judgment on plaintiff's claim that Kakanni denied plaintiff medications.

**C. Dismissal as a Sanction**

Defendants further argue that plaintiff's claims should be dismissed as a sanction for plaintiff's failure to comply with court orders and the rules of discovery pursuant to Fed. R. Civ. P. 37.[7] Fed. R. Civ. P. 37(b)(2)(A)(v) authorizes an involuntary dismissal on the merits for failure of the plaintiff to comply with an order of the court to provide or permit discovery. To determine the proper sanction, if any, the Court must look to the party's reasons for such failure to comply. Central to the determination of the appropriate sanction is the willfulness or lack of good faith manifested by the party's conduct. Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197 (1958). As noted by the Sixth Circuit, "dismissal is an appropriate sanction where the party's failure to cooperate with the court's discovery orders is due to willfulness. A willful violation occurs whenever there is conscious and intentional failure to comply with the court order." Bass v. Jostens, Inc., 71 F.3d 237, 241 (6th Cir. 1995) (citing Brookdale Mill, Inc. v. Rowley, 218 F.2d 728, 729 (6th Cir. 1954)). Four factors should be considered when deciding whether to dismiss under Rule 37(b)(2): (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. See Bass, 71 F.3d at 241; Bank One of Cleveland v. Abbe, 916 F.2d 1067, 1073 (6th Cir. 1990);

---

[7]Defendants also cite to Fed. R. Civ. P. 41(b) and the inherent power of the Court as a basis for dismissal, but the factors considered when dismissing an action under Fed. R. Civ. P. 41(b), Fed. R. Civ. P. 37(b), or a court's inherent power are largely the same. Coleman v. American Red Cross, 23 F.3d 1091, 1094 n. 1 (6th Cir. 1994).

Stough v. Mayville Community Schools, 138 F.3d 612, 615 (6th Cir.1998).  "Dismissal of an

action for failure to cooperate in discovery is a sanction of last resort."  Patton v. Aerojet

Ordnance Co., 765 F.2d 604, 607 (6th Cir.1985); see also The Proctor & Gamble Co. v. Haugen,

427 F.3d 727, 738 (10th Cir. 2005) ("Dismissal with prejudice represents an extreme sanction

and thus is considered appropriate only in cases involving willfulness, bad faith, or some fault on

the part of the party to be sanctioned")(internal citations and quotations omitted).

      Here, defendants first argue that plaintiff's complaint should be dismissed because

plaintiff has failed to sign and return medical authorizations.  In preparing a defense, defendants

requested plaintiff sign and return authorization forms allowing defendants to obtain plaintiff's

relevant medical records and his grievance procedure records.  Plaintiff did not comply with the

request, and on June 5, 2008, this court ordered plaintiff to sign and return the authorizations

(D/E #103).  Plaintiff did not comply with that court order and, on June 23, 2008, defendants

filed a motion to dismiss for failure to comply with the court order (D/E #106).  On July 21,

2008, plaintiff filed a response to defendants motion to dismiss in which he asserted that he had

sent the authorization for his medical records to defendants over a month ago (D/E #109).  In

their reply to plaintiff's response, defendants asserted that plaintiff only provided the signed

authorization regarding plaintiff's medical records after defendants filed their motion to dismiss

and that plaintiff never provided a signed authorization with respect to his grievance records

(D/E #111).

      On September 9, 2008, this court issued a report and recommendation (D/E #113) finding

that dismissal with prejudice was not an appropriate sanction at that time and defendants' motion

should be denied given the lack of prejudice suffered by defendants, the absence of any warning to plaintiff regarding the failure to comply with the court's order and the fact that no lesser sanctions have been imposed against plaintiff previously.  This court also recommended that plaintiff should be given until October 30, 2008 to provide defendants with a signed authorization permitting access to plaintiff's grievance records and that plaintiff should be ordered to file a copy of the signed authorization with the court.  This court further recommended that plaintiff be put on notice that any future failure to comply with court orders could lead to dismissal of his action with prejudice.

On September 24, 2008, defendants filed an objection to this court's report and recommendation (D/E #114).  In that objection, defendants argued that they were prejudiced by plaintiff's failure to comply with the discovery rules and court orders because they intended to file a motion for summary judgment and needed the authorizations to do so.  Defendants also noted that plaintiff had recently identified additional medical service providers for whom he had not provided signed authorizations.

On November 14, 2008, the Honorable Robert H. Cleland issued an order sustaining in part and denying in part defendants' objections to this court's report and recommendation (D/E #118).  In that order, Judge Cleland ordered plaintiff to fully comply with the June 5, 2008 order by December 1, 2008 and to file a notice of compliance with the court by December 2, 2008. Judge Cleland also ordered that, if plaintiff does not comply, defendants should file a motion to dismiss on or before December 16, 2008.  Judge Cleland noted that defendants had filed a motion for summary judgment and further ordered that, if the authorizations received from

-22-

plaintiff necessitated further briefing, defendants had until December 15, 2008 to supplement their motion for summary judgment.  Plaintiff was also specifically cautioned that further non-compliance with the June 5, 2008 order would result in a dismissal of the action.

Judge Cleland's order was entered subsequent to the motion for summary judgment pending before the court, but prior to defendants' reply brief.  The reply brief makes no mention of a failure by plaintiff to comply with Judge Cleland's most recent order and defendants' never filed a supplement to their motion to summary judgment or a motion to dismiss arguing that plaintiff failed to comply with Judge Cleland's November 14, 2008 order, as that order specifically allowed.  Thus, it appears that plaintiff complied with the order and, therefore, this court recommends that defendants motion to dismiss plaintiff's complaint as a sanction be denied.[8]

**V. Conclusion**

For the reasons discussed above, this Court recommends that defendants' motion for summary judgment be **GRANTED** and that this case be closed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140

---

[8]Defendants also argue that plaintiff should be sanctioned and his case dismissed because he has failed to file a witness list, but it does not appear that plaintiff's conduct was in bad faith and defendants do not identify any prejudice they have suffered.  Therefore, defendants' argument should be rejected.

-23-

(1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: March 24, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on March 24, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan